[Civ. No. 10403.   Third Dist.   July 26, 1962.]

BALDWIN CONTRACTING COMPANY, INC., Plaintiff and Respondent, v. CARL M. BUCK BUILDING COMPANY, Defendant and Appellant.

Higbie & Higbie and Richard A. Higbie for Defendant and Appellant.

Manwell & Manwell and Ray Manwell for Plaintiff and Respondent.

PIERCE, J.—This is an appeal from a money judgment in an action on a common count. Defendant-appellant admits the

work for which recovery was allowed was done at appellant's instance and request, that it was properly done and that appellant agreed to pay for it. It contends, however, that the agreement to pay was without consideration because plaintiff-respondent was already obligated by an earlier contract to do the work without additional charge.

Appellant was the general contractor under a contract with the United States Air Force to construct a housing project at Stead Air Force Base in Nevada. Respondent was one of a number of subcontractors on this job. Its subcontract covered certain water and sewer systems. This work was completed satisfactorily and was accepted by appellant. Some appreciable time thereafter certain other subcontractors, particularly one Mendenhall with a grading subcontract, tore up and damaged the pipeline. Bud Cleland, appellant's manager and superintendent on this job, asked respondent to do the work of repair. Respondent had performed other previous work of repair without charge, but its engineer and job superintendent, Robert Kirch, refused to perform this more extensive work unless appellant would pay for it.

The provision of the subcontract which was in dispute between the parties is section 5 thereof. It provides in part: "Subcontractor shall be responsible for any loss or damage to his work prior to the time of final acceptance as provided in the Housing Contract. Subcontractor shall carry liability insurance in companies and on forms satisfactory to Contractor to cover any loss or damage *that may be caused by operations of Subcontractor* under this contract . . . ." (Emphasis supplied.)

The entire housing project job had not been completed and finally accepted by the Air Force at the time the damage had occurred to the pipeline. The general contract, however, called for final acceptance of the several units (called "phases" or "mortgage areas") separately, and although appellant's president, Carl Buck, testified that none of the separate units had been accepted when the damage occurred, there is other testimony, by respondent's engineer Kirch, that Cleland had informed him that the "phase" in which the damaged pipeline was located had been theretofore accepted by the Air Force.

When respondent's representative demanded that payment be made by appellant as a condition to respondent's performing the work of repair, Cleland got in touch with Buck, who

authorized the work. Work orders were then signed by Cleland, the work was done and in March 1958 appellant was billed. These bills totaling $1,273.27 were not then questioned; neither were they paid. After repeated billings, this action was brought.

The principal contention of appellant is that the subcontract between appellant and respondent obligated the latter to perform the work of repair and therefore appellant's subsequent agreement to pay for the repairs was without consideration and unenforceable.

In support of this contention appellant invokes the rule that when a party merely agrees to do what he was already obligated by contract to do "he cannot demand an additional compensation therefor, and, although by taking advantage of the necessities of his adversary, he obtains a promise for more, the law will regard it as nudum pactum, and will not lend its process to aid in the wrong." (1 Williston on Contracts (3d ed.) § 130, p. 532; *Pacific Finance Corp.* v. *First Nat. Bank,* 4 Cal.2d 47, 50 [47 P.2d 460].)

This rule is only reached here, however, if it be first established that respondent under its original contract with appellant was already obligated to repair the pipeline without additional compensation. ██ And if there existed an honest dispute between the parties in the interpretation of the contract's provisions as to respondent's obligation, the settlement of said dispute by appellant's new promise to pay is supported by sufficient consideration. (1 Williston on Contracts (3d ed.) § 130, p. 536; 1 Rest., Contracts, § 76(a), p. 83; *Enslow* v. *von Guenthner,* 193 Cal.App.2d 318, 321 [14 Cal.Rptr. 231].)

Appellant asserts that, under section 5 quoted above, the contractual obligation of respondent to repair the work without charge is clear; and that this obligation lasted until the entire housing project contract, all separate units of it, had been finally accepted.

██ We think that the contract is not clear. Its language leaves us uncertain as to whether the parties meant "final acceptance" of respondent's work by appellant or by the Air Force, or whether they meant final acceptance by the Air Force of the particular unit of the general contract in which respondent's work was located, or of the entire project. Some ambiguity also exists as to whether the "loss or damage" for which respondent was responsible included damage to respondent's work caused by other subcontractors or was limited

to those items for which it was to carry liability insurance, to-wit: "damage that may be caused by operations of Subcontractor under this contract."

Appellant argues that the obligation of respondent in this respect was a part of its contractual duty to "protect its work" from damage. Respondent's obligation in this respect, however, is limited by another part of the agreement, section 11, which states: "Subcontractor shall take suitable measures and means to protect his work from any loss or damage to the same which might occur *in the progress of construction* . . . ."

In view of these ambiguities, and under the circumstances existing, we cannot say that there was not an honest dispute, the settlement of which furnished sufficient consideration for the second contract.

Appellant's other contention is that respondent is estopped to recover the amount sued for under the separate contract to make the repairs because it submitted a billing dated August 4, 1958, labeled "Final Billing For Work Performed at Stead AFB, Nevada" for $6,431.95 (which admittedly did not include the items of repair for which appellant had been billed in March 1958). We follow this argument with difficulty. Respondent's secretary had explained that its billing for the work of repair, as for other "extra" work performed for appellant (billed and paid for), had been under "open account" entirely separate from the contract account (although all billings carried the same "job number"). There was no showing that appellant's auditor was unaware of these separate accounts and methods of billing. It was the testimony of respondent's witnesses that the billing rendered in August was intended to be "final" only with respect to the original contract and had no reference to the repair work done; also, that the mutual releases exchanged had the same import. Appellant's denial of this was vague; the releases themselves were not introduced in evidence. The trial court found against appellant's contentions.

Appellant's theory of estoppel is expressed in its brief as follows: "The written contract gave the appellant the right to set-off the amount of the repairs from the moneys owing to the respondent under the written contract. (. . . Section 3 of Contract.) That upon the signing of the mutual release appellant waived any claim against the respondent for its failure to perform under Section 5 of the contract . . . and lost its

opportunity to claim a set-off. The respondent should be estopped from now claiming that the 'final billing for work performed at Stead AFB-Nevada' was not in fact a final billing . . . ."

Section 3 of the contract, however, does not give to the contractor a right of set-off under the circumstances here existing. It permits the contractor to withhold moneys in instances where the subcontractor has delayed or otherwise defaulted in performance. It also provides that in the event the subcontractor shall perform any work for any other subcontractor, or has had another subcontractor perform work for him it shall be the sole responsibility of the subcontractor to obtain reimbursement from, or to pay money to, the other subcontractor and the contractor is given the right to withhold money due under the subcontract until any dispute between the subcontractors affected is settled.

This section is not applicable here. There is no evidence of any default by respondent in its performance of its subcontract. There was no agreement between respondent and Mendenhall. On the contrary, appellant's sole witness, Carl Buck, testified that after appellant had entered into the second contract with respondent to perform the repair work it had in turn "made the arrangements with Mendenhall to pay for the work." Respondent billed appellant and had no dealings with Mendenhall. Appellant itself billed Mendenhall.

When appellant received respondent's August billing, therefore, there was no right of set-off under section 3 or any other section of the original contract between appellant and respondent. The contract neither made respondent a guarantor nor an indemnitor of Mendenhall's performance. Appellant, therefore, had no right either to withhold moneys due respondent nor to withhold its release. It would have been in default had it done so. One party to a contract cannot be estopped for a failure to afford the other party an opportunity to breach it.

The judgment is affirmed.

Peek, P. J., and Schottky, J., concurred.